1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br><br>        v.<br><br>DIANA GAMA,<br><br>                                Defendant. | Case Nos. 18-cr-03516-BAS-1;<br>            20-cv-00459-BAS<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255 (ECF No. 33); AND**<br><br>**(2) DENYING MOTION FOR COMPASSIONATE RELEASE (ECF No. 37)** |
|---|---|

Presently before the Court are Defendant Diana Gama's Motion to Vacate her sentence under 28 U.S.C. § 2255 (ECF No. 33) and Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 37).  For the reasons stated below, the Court **DENIES** both Motions.

## I.      BACKGROUND

Ms. Gama's background shows an escalating level of criminal involvement. In March 2010, she was convicted of importing marijuana through the Calexico Port of Entry, for which she received a 30-day sentence.  (Presentence Report ("PSR")

18cr3516

¶ 34, ECF No. 22.)[1]

Two months later, in May 2010, Ms. Gama was convicted of importing cocaine, for which she received a sentence of 70 months followed by five years of supervised release.  (PSR ¶ 35.)  While she was on supervised release, on July 13, 2018, she was arrested after driving through the Otay Mesa Port of Entry in a car that had 30 packages containing 15 kilograms of methamphetamine hidden throughout the vehicle.  (PSR ¶¶ 4–5.)

On September 10, 2018, Ms. Gama pled guilty to importing methamphetamine, an offense that she acknowledged held a minimum mandatory term of ten years in custody.  (ECF No. 19; Plea Agreement § III.A, ECF No. 20.)  In exchange for her plea, the Government agreed not to file an enhancement that would have increased her sentence from a 10-year minimum mandatory to a 20-year minimum mandatory sentence.  (Plea Agreement § I.B.)  Ms. Gama agreed to waive her right to appeal or collaterally attack "every aspect of the conviction and sentence," unless she was sentenced to more than the 10-year minimum mandatory and except for an attack based on ineffective assistance of counsel.  (Plea Agreement § XI.)

In preparation for sentencing, defense counsel filed a Motion for Downward Departure (ECF No. 26), a Sentencing Memorandum (ECF No. 28), and a Sentencing Summary Chart (ECF No. 29).  In the Motion for Downward Departure, counsel argued that Ms. Gama was entitled to a reduced sentence because: (1) she "was sexually, physically and emotionally abused most of her young years," (ECF No. 26 at 1:20–21); (2) "there is no doubt that the defendant has genuine substantial emotional-psychological issues," (*id.* at 1:22–23); and (3) "[t]he defendant presently also has significant medical issues," (*id.* at 1:24–25).  According to the PSR, Ms. Gama, who was 36 years old at the time, had medical conditions that included "high

---

[1] The Court's electronic record references are to the criminal case 18-cr-03516-BAS-1.

1   blood pressure since 2008, a thyroid condition since 2010, anemia since 2012, and

2   high cholesterol since 2016." (PSR ¶ 51.)    Ms. Gama first began using

3   methamphetamine, crack cocaine, and heroin at 11 years old.  (PSR ¶ 56.)  She

4   graduated from the Bureau of Prisons RDAP (drug treatment) program in 2014 and

5   claims to have been clean since then.  (*Id.*)

6          Defense counsel also argued in the Motion for Downward Departure that Ms.

7   Gama should receive a more lenient sentence because she has two children ages three

8   and two.  (ECF No. 26 at 1:26–27.)  Although defense counsel did not mention Ms.

9   Gama's four other children, two of those other children were removed from her

10   custody by Child Protective Services and adopted out to other families (PSR ¶ 47),

11   and the oldest two, after going through CPS, had custody awarded to their father,

12   (PSR ¶ 46).

13          The Probation Department noted that Ms. Gama's "family has been involved

14   in drug sales in Mexico for years" and that her "chances for recidivism are high."

15   (PSR ¶ 90.)  On January 8, 2019, the Court sentenced Ms. Gama to the minimum

16   mandatory of ten years in custody.  (ECF No. 32.)  On January 22, 2019, after an

17   admission to violating her supervised release, the Court revoked her supervised

18   release in Case No. 10-cr-2397-BEN and sentenced her to 30 months in custody: 12

19   months consecutive to the sentence in Case No. 18-cr-3516-BAS and 18 months

20   concurrent to this sentence.  (ECF No. 50 in No. 10-cr-2397-BEN.)

21          On March 10, 2020, Ms. Gama filed a Motion to Vacate her sentence pursuant

22   to 28 U.S.C. § 2255 arguing that her counsel was ineffective.  (ECF No. 33.)  The

23   Government has filed a Response in Opposition.  (ECF No. 35.)  Ms. Gama now

24   additionally files a Motion for Compassionate Release.   (ECF No. 37.)   The

25   Government has filed a Response in Opposition.  (ECF No. 42.)

26

27

28

**II.    ANALYSIS**

    **A.    28 U.S.C. § 2255**

        **1.    Time Barred**

Under 28 U.S.C. § 2255(f), a motion must be filed within one year from the date the conviction becomes final.  A conviction becomes final once the deadline for filing the notice of appeal has expired.  *United States v. Gilbert*, 807 F.3d 1197, 1199 (9th Cir. 2015).  Under *Houston v. Lack*, 487 U.S. 266 (1988), a motion is deemed "filed" at the moment it is delivered to prison officials for forwarding to the clerk of the district court.

In this case, Ms. Gama's conviction became final 14 days after entry of the judgment on January 8, 2019—meaning, January 22, 2019.  Thus, January 22, 2020 was her deadline for filing a motion to vacate.  *See* 28 U.S.C. § 2255(f).  Instead, she filed her Motion on March 10, 2020.  Ms. Gama alleges that the Motion was sent on January 20, 2020, that it was returned to her for lack of postage, and that, after revising the Motion and adding argument #4, she re-mailed it.  (Mot. to Vacate ¶ 18.) To support this argument, she attaches what appears to be a copy of a blank piece of paper with two stamps and a handwritten note saying "69¢ due short postage." (*Id.*, Ex. A.)

Even assuming this showing is sufficient to satisfy the prisoner mailbox rule, at the very least, argument #4—which was added after the Motion was returned to Ms. Gama for postage—is time barred.  However, rather than conduct an evidentiary hearing on the issue of whether the prisoner mailbox rule is satisfied, the Court turns to the substance of her argument:  ineffective assistance of counsel.

        **2.    Ineffective Assistance of Counsel**

Ms. Gama argues that her attorney was ineffective because:  (1) he failed to argue the § 3553(a) mitigating factors, specifically that she was sexually abused starting at age four, that she had mental and medical health issues, and that she was the mother to six children; (2) he failed to allow her to see her Presentence Report or

1    discovery; and (3) he failed to file a notice of appeal.  (Mot. to Vacate.)

2         "[A] defendant who pleads guilty upon the advice of counsel may only attack

3    the voluntary and intelligent character of the guilty plea by showing that the advice

4    he received from counsel was ineffective." *Lambert v. Blodgett*, 393 F.3d 943, 979

5    (9th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985)).  Even in a

6    claim of ineffective assistance of counsel in a guilty plea, Ms. Gama must meet the

7    *Strickland* test; that is, she must show first "that counsel's assistance was not within

8    the range of competence demanded of counsel in criminal cases," and second that

9    she suffered actual prejudice because of this incompetence. *Id.* at 979–80; *Hill*, 474

10   U.S. at 57–58.

11        "A deficient performance is one in which counsel made errors so serious that

12   []he was not functioning as the counsel guaranteed by the Sixth Amendment." *Iaea*

13   *v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland v. Washington*, 466 U.S.

14   668, 687 (1984)).  "Review of counsel's performance is highly deferential and there

15   is a strong presumption that counsel's conduct fell within the wide range of

16   reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253

17   (9th Cir. 1987).  The court should not view counsel's actions through "the distorting

18   lens of hindsight."  *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995),

19   (quoting *Deutscher v. Whitley*, 884 F.2d 1152, 1159 (9th Cir. 1989)), *vacated on*

20   *other grounds by Angelone v. Deutscher*, 500 U.S. 901 (1991).  To satisfy the second

21   "prejudice" prong in a guilty plea case, "defendant must show that there is a

22   reasonable probability that, but for counsel's errors, [s]he would not have pleaded

23   guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

24        In this case, Ms. Gama fails to meet either prong of the *Strickland* test.  First,

25   she fails to show that her attorney's performance was deficient.  Although she claims

26   her attorney was ineffective because he failed to argue specific § 3553(a) mitigating

27   factors, the record shows otherwise.  Ms. Gama's attorney did argue these specific

28   factors in a Motion for Downward Departure filed with the court.  In this Motion, the

1    attorney made reference to the paragraphs where each of these factors was discussed

2    in the PSR.  Since her claim is not supported by the record, it must fail.

3         Second, although Ms. Gama claims her attorney failed to show her the

4    discovery or the PSR, she does not attempt to show how this was deficient

5    performance.  At the time of her guilty plea, Ms. Gama verified that she had had a

6    "full opportunity to discuss all the facts and circumstances of this case with defense

7    counsel."  (Plea Agreement § VI.A.)  What discovery she is alleging her attorney

8    should have shown her and how his failure to show it to her was deficient remains a

9    mystery.

10        Finally, Ms. Gama alleges her attorney was ineffective for failing to file an

11   appeal even though she waived her appeal as part of her plea agreement.  The Ninth

12   Circuit made it clear in *United States v. Sandoval-Lopez*, 409 F.3d 1193 (9th Cir.

13   2005), that an attorney's refusal to file an appeal at the request of his client, even if

14   appeal was waived as part of the plea agreement, can rise to the level of ineffective

15   assistance of counsel.  However, Ms. Gama does not allege anywhere in her Motion

16   that she asked her attorney to file an appeal.  Of particular note in the *Sandoval-Lopez*

17   case was the defendant's allegation that his attorney had refused to file the requested

18   appeal.  No such claim is made here.  Furthermore, Ms. Gama fails to mention what

19   grounds, if any, she had for appeal in this case.

20        Finally, Ms. Gama fails to show that she was prejudiced by any of her claims

21   of ineffective assistance.  She makes no attempt to argue that but for any alleged

22   errors of counsel she would not have pled guilty and would have insisted on going to

23   trial.  She was facing a 20-year minimum mandatory sentence because of her prior

24   drug felonies.  The evidence against her was strong.  Instead, her attorney worked

25   out an agreement with the Government where it agreed not to file the enhancement,

26   and she was able to plead to the ten-year minimum mandatory sentence instead.  Ms.

27   Gama fails to make any claim that there was "a reasonable probability that, but for

28   counsel's errors, [s]he would not have pleaded guilty and would have insisted on

1  going to trial." *See Hill*, 474 U.S. at 59.

2      Because Ms. Gama fails to meet either prong of the *Strickland* test, the Court

3  **DENIES** her Motion filed pursuant to 28 U.S.C. § 2255 based on ineffective

4  assistance of counsel.

5                          **3.    *United States v. Helding***

6      In her fourth ground for relief, allegedly added after the Motion was returned

7  to her for additional postage, Ms. Gama alleges that her "due process rights were

8  harmed by her sentence on information not particularly proven reliable."  Ms. Gama

9  cites and attaches *United States v. Helding*, 948 F.3d 864 (7th Cir. 2020).  However,

10 *Helding* involved a defendant who was arrested with 143.7 kilograms of marijuana,

11 but was sentenced based on multiple quantities of methamphetamine that confidential

12 informants had told law enforcement the defendant was dealing.  Even if this claim

13 is not time barred, the *Helding* case has no relevance to Ms. Gama's sentence.  She

14 was only sentenced based on the drugs seized from her vehicle.  No confidential

15 informants were involved in the case.  Therefore, this ground for relief must also be

16 **DENIED**.

17      **B.    Compassionate Release**

18      Ms. Gama also files a Motion for Compassionate Release in light of the threat

19 of the COVID-19 virus.  (ECF No. 37.)  Under 18 U.S.C. § 3582(c)(1)(A), a court

20 may, in certain circumstances, grant a defendant's motion to modify his or her term

21 of imprisonment.  Before filing such a motion, the defendant must first petition the

22 Bureau of Prisons ("BOP") for compassionate release.  18 U.S.C. §3582(c)(1)(A).  A

23 court may grant the defendant's motion for a modification in sentence only if the

24 motion was filed "after the defendant has fully exhausted all administrative rights to

25 appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the

26 lapse of 30 days from the receipt of such a request by the warden of the defendant's

27 facility, whichever is earlier." *Id*.  "Requiring inmates to exhaust their administrative

28 remedies before seeking court intervention serves several purposes.  First, it protects

administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, __ F. Supp. 3d __, 2020 WL 2301202, at *6 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id.* This Court agrees with the vast majority of courts in this circuit that have found such an exhaustion to be mandatory. *See, e.g.*, *United States v. Stanard*, No. CR 16-320-RSM, 2020 WL 1987072, at *4 (W.D. Wash. Apr. 27, 2020); *United States v. Otero*, No. 17-cr-879-JAH, 2020 WL 1912216, at *3 (S.D. Cal. Apr. 20, 2020); *United States v. Allison*, No. CR 16-5207-RBL, 2020 WL 1904047, at *2 (W.D. Wash. April 17, 2020); *United States v. Fuller*, No. CR 17-0324 JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); *United States v. Aguila*, No. 2:16-cr-0046-TLM, 2020 WL 1812159, at *1 (E.D. Cal. Apr. 9, 2020); *United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

In this case, there is some question whether Ms. Gama has exhausted her administrative remedies. She alleges that "[a] request for compassionate release was sent to the Warden on April 13, 2020 via Prison Mailbox." (Mot. for Release at 2.) But she does not attach the request, so, as the Government points out, it is not clear whether this was an individual request or a generic letter sent to the warden on behalf of all inmates of the institution. Additionally, she does not indicate whether the warden responded to her request within the 30 days. However, she did not file her Motion until June 5, more than 30 days after sending her request. So, giving Ms. Gama the benefit of the doubt, the Court will accept that she sent an individual request that was not acted on within 30 days.

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] section 3553(a)]" if the Court finds, as relevant here, that "extraordinary and

1  compelling reasons warrant such a reduction" and "such a reduction is consistent

2  with applicable policy statements issued by the Sentencing Commission." *Ng Lap*

3  *Seng*, 2020 WL 2301202, at *7. As the movant, the defendant bears the burden to

4  establish that he or she is eligible for a sentence reduction. *United States v. Holden*,

5  __ F. Supp. 3d__, 2020 WL 1673440, at *3 (D. Or. 2020).

6      In this case, Ms. Gama has failed to show that "extraordinary and compelling

7  reasons" support her motion for early release. Although COVID-19 poses unique

8  and serious risks for inmates of the BOP, the Government's Opposition details the

9  efforts made by the BOP to contain the virus. (ECF No. 44.) As the Third Circuit

10  has held, "the mere existence of COVID-19 in society and the possibility that it may

11  spread to a particular prison alone cannot independently justify compassionate

12  release." *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020). Ms. Gama asserts,

13  without any supporting documentation, that "Carswell [presumably where she is

14  being held] has had at least 3 confirmed cases of COVID-19." (Mot. for Release at

15  2.)[2] Even assuming this to be true, it fails to meet the threshold for extraordinary and

16  compelling reasons for release.

17      Additionally, Ms. Gama's individual circumstances do not support her claim

18  that she is at risk if she contracts the virus. Ms. Gama is in her 30s, not an age that

19  is particularly at risk if infected with the virus. And, although she claims she suffers

20  from hypertension, bi-polar disorder, PTSD, depression, diabetes, and has previously

21  suffered a stroke, she provides no documentation to support these claims. (*See* Mot.

22  for Release.) In fact, at the time she was interviewed by Probation, she notably did

23  not mention that she suffered from diabetes. Although diabetes and pulmonary

24  hypertension can make an individual more susceptible to harm from the virus, the

25  other conditions listed by Ms. Gama are not conditions that cause people to be at high

26

27          [2] According to the BOP's website, no inmates or staff at Carswell FMC are currently testing
positive for COVID-19, although one inmate has died and one has fully recovered from the virus.

28  Federal Bureau of Prisons—COVID-19, https://www.bop.gov/coronavirus (lasted visited June 19,
2020).

risk from COVID-19.  *See* Centers for Disease Control & Prevention—People Who Are At Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 19, 2020); *see also* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 19, 2020).  Ms. Gama simply provides insufficient support for her claims that "extraordinary and compelling" reasons support her request for release.

Furthermore, the § 3553(a) factors weigh against granting her Motion. Specifically, Ms. Gama's background, including the fact that this is her third felony conviction for importing drugs into the United States, the fact that her previous sentence of 70 months was inadequate to deter her from smuggling drugs again, and the fact that probation concluded that her likelihood of recidivism was high, all militate in favor of a higher sentence.  Finally, because of this recidivism risk, a high sentence is necessary to protect the public from any future smuggling endeavors. Therefore, the Court concludes Ms. Gama's Motion for Compassionate Release should be denied.

## III.    CONCLUSION

Ms. Gama's Motion filed pursuant to 28 U.S.C. § 2255 is **DENIED** (ECF No. 33).  The Clerk of Court is ordered to close civil Case No. 20-cv-459-BAS. Additionally, Ms. Gama's Motion for Compassionate Release is also **DENIED** (ECF No. 37).

**IT IS SO ORDERED.**

**DATED: June 19, 2020**

**Hon. Cynthia Bashant**
**United States District Judge**

– 10 –

18cr3516